# 22-13658

# United States Court of Appeals

*for the*

# Eleventh Circuit

BURTON W. WIAND, not individually but solely in his capacity as
Receiver for Oasis International Group, Limited, *et al.*,

*Plaintiff/Appellant,*

— v. —

ATC BROKERS LTD., DAVID MANOUKIAN, SPOTEX LLC,

*Defendants/Appellees.*

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

## BRIEF OF APPELLEE SPOTEX LLC

MATTHEW S. ADAMS
FOX ROTHSCHILD LLP
49 Market Street
Morristown, New Jersey 07960
(973) 992-4800

*Counsel for Appellee Spotex LLC*

TROY SHELTON
FOX ROTHSCHILD LLP
434 Fayetteville Street, Suite 2800
Raleigh, North Carolina 27601
(919) 755-8700

*Counsel for Appellee Spotex LLC*



**CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT**

Spotex, LLC provides the following certificate of interested persons:

1. 1331 Lost Key Place, LLC, *Entity in Receivership*

2. 444 Gulf of Mexico Drive, LLC, *Entity in Receivership*

3. 4064 Founders Club Drive, LLC, *Entity in Receivership*

4. 6922 Lacantera Circle, LLC, *Entity in Receivership*

5. 4OAKS LLC, *Entity in Receivership*

6. Adams, Matthew S., *Counsel for Defendant-Appellee Spotex LLC*

7. Anile, Joseph S., II, *Defendant in underlying Regulatory Action*

8. ATC Brokers, Ltd., *Defendant-Appellee*

9. Bowling Green Capital Management, LLC, *Entity in Receivership*

10. Commodity Futures Trade Commission, *Plaintiff in underlying Regulatory Action*

11. DaCorta, Michael J., *Defendant in underlying regulatory action*

12. DeMaria, Joseph A., *Counsel for Defendant-Appellee Spotex LLC*

13. Duran, Francisco ("Frank") L., *Defendant in underlying Regulatory Action*

14. Eldgidely, Robert F., *Counsel for Defendant-Appellee Spotex LLC*

15. Fox Rothschild, LLP, *Counsel for Defendant-Appellee Spotex LLC*

16. Greenberg Traurig, P.A., *Counsel for Defendants-Appellees ATC Brokers Ltd. and David Manoukian*

17. Haas, John J., *Defendant in underlying Regulatory Action*

18. Katz, Joshua A., *Counsel for Plaintiff-Appellant Burton Wiand*

19. Kehoe, Greg, *Counsel for Defendants-Appellees ATC Brokers Ltd. and David Manoukian*

20. Kingman, Marissa Koblitz, *Counsel for Defendant-Appellee Spotex LLC*

21. Lagoon Investments, Inc., *Entity in Receivership*

22. Manoukian, David, *Defendant-Appellee and shareholder of ATC Brokers Ltd.*

23. Manoukian, Jacques, *shareholder of ATC Brokers Ltd.*

24. Montie, Raymond P., III, *Defendant in underlying Regulatory Action*

25. Oasis Global FX, Limited, *Entity in Receivership*

26. Oasis Global FX, S.A., *Entity in Receivership*

27. Oasis Global (Nevis) Limited, *Entity in Receivership*

28. Oasis International Group, Limited, *Entity in Receivership*

29. Oasis Management, LLC, *Entity in Receivership*

30. Rengstl, Patrick J., *Counsel for Plaintiff-Appellant Burton Wiand*

31. Roar of the Lion Fitness, LLC, *Entity in Receivership*

32. Sallah Astarita & Cox, LLC, *Counsel for Plaintiff-Appellant Burton Wiand*

33. Sallah, James D., *Counsel for Plaintiff-Appellant Burton Wiand*

34. Satellite Holdings Company, *Entity in Receivership*

35. Scriven, Hon. Mary Stenson, *U.S. District Court Judge*

36. Shelton, Troy D., *Counsel for Defendant-Appellee Spotex LLC*

37. Spotex LLC, *Defendant-Appellee*

38. Torres, Christopher, *Counsel for Defendants-Appellees ATC Brokers Ltd. and David Manoukian*

39. White, Christopher R., *Counsel for Defendants-Appellees ATC Brokers Ltd. and David Manoukian*

40. Wiand, Burton W., *Plaintiff-Appellant*

41. Yagoda, Jay A., *Counsel for Defendants-Appellees ATC Brokers Ltd. and David Manoukian*

**CORPORATE DISCLOSURE**

Spotex LLC is not a publicly held corporation.

/s/ Matthew S. Adams
*Counsel for Spotex LLC*

## STATEMENT REGARDING ORAL ARGUMENT

The defects with the Receiver's claims are legion. Oral argument in this case is unnecessary because the Receiver's claims were properly dismissed for the rudimentary pleading failures.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT ................................ C-1 of 4

STATEMENT REGARDING ORAL ARGUMENT ................................... i

TABLE OF CONTENTS ............................................................. ii

TABLE OF AUTHORITIES ....................................................... iv

INTRODUCTION ..................................................................... 1

ISSUES PRESENTED FOR REVIEW ........................................... 3

STATEMENT OF THE CASE .................................................... 4

SUMMARY OF THE ARGUMENT ............................................. 7

ARGUMENT ......................................................................... 9

    I.    The Claims Against Spotex Are Barred by the Communications Decency Act ............................................. 9

        A.    Spotex is an interactive computer service ................... 12

        B.    The Receiver's claims seek to hold Spotex responsible as the speaker or publisher of information ................................................................. 15

        C.    The relevant information was provided by another ................................................................... 17

    II.    The Receiver Lacks Standing to Pursue Any Claims Against Spotex .................................................... 23

        A.    The *in pari delicto* defense doesn't matter ................. 23

B.     The Receiver lacks standing for its claims against Spotex ............................................................................. 24

III.    The Receiver Did Not Plausibly Plead Negligence Claims Against Spotex ........................................................... 33

IV.    The Receiver Did Not Plausibly Plead Aiding and Abetting Claims Against Spotex .................................................. 37

A.     This Court should decline to recognize the aiding and abetting torts because the Florida Supreme Court has not recognized them .................................... 37

B.     The Receiver did not plead actual knowledge or substantial assistance .................................................. 40

1.    Spotex did not have actual knowledge of the relevant misconduct. .......................................... 41

2.    Spotex did not render substantial assistance to the schemers ................................................... 46

V.    The District Court Didn't Owe the Receiver a Chance to Amend Because the Receiver Never Asked for It ................. 50

CONCLUSION .......................................................................... 53

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**CASES**

*Allied Irish Banks, P.L.C. v. Bank of Am., N.A.,*
    No. 03-cv-3748, 2006 WL 278138 (S.D.N.Y. Feb. 2, 2006) ...... 43, 44

*Almeida v. Amazon.com, Inc.,*
    456 F.3d 1316 (11th Cir. 2006) ..................................................... 10

*Am. United Life Ins. Co. v. Martinez,*
    480 F.3d 1043 (11th Cir. 2007) .................................................... 40

*Barnes v. Yahoo!, Inc.,*
    570 F.3d 1096 (9th Cir. 2009) ...................................................... 15

*Bellum v. PCE Constructors, Inc.,*
    407 F.3d 734 (5th Cir. 2005) ........................................................ 38

*Bonner v. City of Prichard, Ala.,*
    661 F.2d 1206 (11th Cir. 1981) .................................................... 38

*Bride v. Snap Inc.,*
    No. 2:21-CV-06680,
    2023 WL 2016927 (C.D. Cal. Jan. 10, 2023) ............................... 16

*Chang v. JPMorgan Chase Bank, N.A.,*
    845 F.3d 1087 (11th Cir. 2017) .................................................... 46

*Christopher v. Depuy Orthopaedics, Inc.,*
    888 F.3d 753 (5th Cir. 2018) ................................................. 39, 40

*Clay Elec. Co-op., Inc. v. Johnson,*
    873 So. 2d 1182 (Fla. 2003) .................................................... 33-34

*Czeremcha v. Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO,*
    724 F.2d 1552 (11th Cir. 1984) .................................................... 51

*Divino Grp. LLC v. Google LLC,*
　　No. 19-CV-04749, 2023 WL 218966 (N.D. Cal. Jan. 17, 2023)......16

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC,*
　　521 F.3d 1157 (9th Cir. 2008) .................................................11, 19

*Force v. Facebook, Inc.,*
　　934 F.3d 53 (2d Cir. 2019)..............................................................11

*Freeman v. Dean Witter Reynolds, Inc.,*
　　865 So. 2d 543 (Fla. Dist. Ct. App. 2003)..............................*passim*

*Grayson v. Anderson,*
　　816 F.3d 262 (4th Cir. 2016) .........................................................38

*Groom v. Bank of Am.,*
　　No. 8:08-CV-2S67-JDW-EAJ,
　　2012 WL 50250 (M.D. Fla. Jan. 9, 2012) .........................41, 45, 48

*Henderson v. Source for Pub. Data, L.P.,*
　　53 F.4th 110 (4th Cir. 2022).........................................9, 16, 17, 18

*Hines v. FiServ, Inc.,*
　　No. 808-CV-2569-T-30AEP,
　　2010 WL 1249838 (M.D. Fla. Mar. 25, 2010) ...............................48

*In re Palm Beach Fin. Partners, L.P.,*
　　517 B.R. 310 (Bankr. S.D. Fla. 2013)............................................48

*Isaiah v. JPMorgan Chase Bank,*
　　960 F.3d 1296 (11th Cir. 2020) .............................................*passim*

*Jane Doe No. 1 v. Backpage.com, LLC,*
　　817 F.3d 12 (1st Cir. 2016)............................................................20

*Jones v. Dirty World Ent. Recordings LLC,*
　　755 F.3d 398 (6th Cir. 2014) .........................................................19

*K & S P'ship v. Cont'l Bank, N.A.,*
    952 F.2d 971 (8th Cir. 1991) ..........................................................50

*Kowkabany v. Home Depot, Inc.,*
    606 So. 2d 716 (Fla. Dist. Ct. App. 1992)......................................34

*Krys v. Pigott,*
    749 F.3d 117 (2d Cir. 2014)............................................................41

*Lamm v. State St. Bank & Tr.,*
    749 F.3d 938 (11th Cir. 2014) ..................................... 36, 39, 41, 45

*Lawrence v. Bank of Am., N.A.,*
    455 F. App'x 904 (11th Cir. 2012) ...........................................40, 41

*McCain v. Fla. Power Corp.,*
    593 So. 2d 500 (Fla. 1992)..............................................................34

*Monsarrat v. Newman,*
    28 F.4th 314 (1st Cir. 2022 ............................................................17

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,*
    591 F.3d 250 (4th Cir. 2009) ..............................................10, 11, 19

*Northview Motors, Inc. v. Chrysler Motors Corp.,*
    227 F.3d 78 (3d Cir. 2000)..............................................................38

*O'Halloran v. First Union Nat. Bank of Fla.,*
    350 F.3d 1197 (11th Cir. 2003) ................................................44, 45

*Platinum Ests., Inc. v. TD Bank,*
    No. 11-60670-CIV,
    2012 WL 760791 (S.D. Fla. Mar. 8, 2012) ..............................39, 41

*Prager Univ. v. Google LLC,*
    301 Cal. Rptr. 3d 836 (Cal. Ct. App. 2022) ...................................16

*Quality Cleaning Products R.C., Inc. v. SCA Tissue N. Am., LLC*,
 794 F.3d 200 (1st Cir. 2015) ............................................................38

*Rehab. Ctr. at Hollywood Hills, LLC v. Fla. Power & Light Co.*,
 299 So. 3d 16 (Fla. Dist. Ct. App. 2020) ................................ 33, 36

*Rhynes v. Branick Mfg. Corp.*,
 629 F.2d 409 (5th Cir. 1980) ........................................................38

*Richter v. Wells Fargo Bank NA*,
 No. 2:11-CV-695-FTM-29,
 2015 WL 163086 (M.D. Fla. Jan. 13, 2015) ........................... 49, 50

*State Farm Fire and Cas. Co. v. Steinberg*,
 393 F.3d 1226 (11th Cir. 2004) ...................................................37

*Taubenfeld v. Lasko*,
 324 So. 3d 529 (Fla. Dist. Ct. App. 2021) ....................................40

*Thakkar v. Bay Point Cap. Partners, LP (In re Bay Circle Props., LLC)*,
 955 F.3d 874 (11th Cir. 2020) .....................................................32

*Tokyo Gwinnett, LLC v. Gwinnett Cnty.*,
 940 F.3d 1254 (11th Cir. 2019) ...................................................32

*United States v. Thomas*,
 32 F.4th 1073 (11th Cir. 2022) ....................................................23

*Wagner v. Daewoo Heavy Indus. Am. Corp.*,
 314 F.3d 541 (11th Cir. 2002) ................................................ 51, 52

*Wiand v. Wells Fargo Bank, N.A.*,
 86 F. Supp. 3d 1316 (M.D. Fla. 2015), *aff'd*,
 677 F. App'x 573 (11th Cir. 2017) .......................................... 35, 36

*Zeran v. Am. Online, Inc.*,
 129 F.3d 327 (4th Cir. 1997) .......................................................10

*ZP No. 54 Ltd. P'ship v. Fid. & Deposit Co. of Md.*,
  917 So. 2d 368 (Fla. Dist. Ct. App. 2005)......................................47

**STATUTES**

47 U.S.C. § 230 ......................................................................... *passim*

47 U.S.C. § 230(b)(3)....................................................................20

47 U.S.C. § 230(c)(1) .......................................................9, 11, 16, 18

47 U.S.C. § 230(f)(2) ...........................................................12, 13, 14

47 U.S.C. § 230(f)(4) ....................................................................13

47 U.S.C. § 230(f)(4)(C) ................................................................13

**RULES**

Rule 9(b) ...........................................................................40, 41

M.D. Fla. L. R. 3.01(g) ..............................................................51-52

## INTRODUCTION

The district court recognized that the Receiver's claims against Spotex are legally unsupported because the claims are barred by the Communications Decency Act. This Court can affirm the dismissal under that Act, which was the reason stated by the district court, or for various other fatal defects in the claims against Spotex, as discussed below.

ATC was the customer of Spotex, and the Receivership Entities were the customers of ATC. The vertical relationship between ATC and Spotex, and the lack of any privity between Spotex and the Receivership Entities, are central to understanding the soundness of the district court's dismissal of Spotex.

Spotex provides white-label software services. This means that, while the software services are proprietary to Spotex, others can brand and use the software services as their own to carry out their business, including interacting with their investors.

The Receivership Entities, through their owners and officers, abused this software as part of a larger scheme to enrich themselves and defraud their investors. There have been multiple criminal convictions of individuals associated with the Receivership Entities responsible with

this scheme, and Spotex cooperated with the government's criminal investigation and prosecution of those criminals. Yet the Receiver appointed for the Receivership Entities—and not the individual investors defrauded by the Receivership Entities—has turned around and sued Spotex using an array of legal theories that do not pass scrutiny. The Receiver's claims fail for four reasons.

First, the theory falters at the courthouse doors because of the Communications Decency Act. The Act immunizes internet software providers from being held liable for merely publishing others' content. Here, the Receiver wants to hold Spotex liable for the misinformation published by the Receivership Entities and their criminal owners and officers. As the district court properly concluded, Congress designed the Act to bar those kinds of claims where, as here, a software provider is merely a passive technology conduit and not a content creator.

Second, the Receiver lacks standing to bring these claims at all. Special rules limit the standing of a receiver to bring claims. The Receiver is really just trying to assert claims, if they validly exist, to the defrauded investors. But the law does not grant that kind of third-party standing to receivers.

Third and fourth, the claims are not properly pleaded. Spotex did not owe the Receivership Entities any duty to prevent them from harming their investors, nor did Spotex knowingly do anything to advance the criminal scheme. Although the district court didn't reach it, it could also have dismissed the negligence and aiding and abetting claims for these defects.

For each or any of these reasons, the judgment below, dismissing all claims against Spotex, should be affirmed.

## ISSUES PRESENTED FOR REVIEW

For Spotex, this appeal raises five issues:

1.      The Receiver seeks to hold Spotex liable for the content of information published to investors of the Receivership Entities by the Entities' own owners and officers. Did the district court correctly hold that the Communications Decency Act immunizes Spotex from such liability?

2.      Does the Receiver lack standing to sue Spotex for common law torts?

3.      Has the Receiver plausibly alleged negligence claims against Spotex?

4.    If aiding and abetting claims are recognized under Florida law, has the Receiver plausibly alleged them against Spotex?

5.    The Receiver amended his complaint once, and never requested leave to amend again.  Did the district court err by not giving the Receiver another chance at amendment sua sponte?

## STATEMENT OF THE CASE

The Receiver's amended complaint alleges the following facts, which are accepted as true in this procedural posture.

Spotex is a business that provides back-office financial services to its customers through software that is used to conduct foreign exchange trading of one nation's currency for another.  (ECF No. 36 at 35 ¶¶ 106-07.[1])  The relevant software products are "white label," meaning that Spotex's customers (or its customers' customers, as with the Receivership Entities) will rebrand the outward, investor-facing appearance of the software with their own logos, akin to a typical online banking portal.  (*Id.* ¶ 107.)

---

[1] References in this brief to ECF numbers refer to the docket entry numbers assigned by the district court, unless otherwise noted.

Relevant here, ATC hired Spotex for its software services. ATC then sold the Receivership Entities access to that software, and the Receivership Entities put their own brand on it without changing the core functionality of the software. (*Id.* at 25 ¶ 75, 35 ¶ 107.) ATC in turn gave the Receivership Entities the ability to engage in forex transactions and to open forex accounts with ATC's brokerage. (*Id.* at 25 ¶ 74.)

The Receivership Entities later exploited Spotex's software to present the Entities' investors and creditors with fake investment returns. (*Id.* at 35-44 ¶¶ 105-31.) The investor-facing side of the software produced reports that the Receivership Entities (and their fraudulent owners and officers) criminally manipulated through a series of "adjustments" to conceal the investors' losses and defraud investors. (*Id.* at 41 ¶ 121.)

The Entities began by making these adjustments manually. (*Id.*) They then asked ATC how to use the software to make automatic adjustments, who in turn asked Spotex how to do so. (*Id.* at 41 ¶¶ 122-23.) Spotex responded that this could be done only with the master login, which ATC possessed. (*Id.* at 36 ¶ 110, 42 ¶ 124.)

Eventually, the scheme collapsed. The CFTC sued the Receivership Entities (OIG, OM, and Satellite Holdings), as well as the Entities' owners and officers (DeCorta, Anile, Duran, Haas, and Montie). (*Id.* at 1 ¶ 1.) The amended complaint refers to these schemers and defrauders, collectively as "the CFTC Defendants." (*Id.*)

Plaintiff Burton Wiand was appointed as the receiver for the Receivership Entities. In that capacity he sued ATC, Manoukian, and Spotex. (*Id.* at 1 ¶¶ 1, 8.) The Receiver sued Spotex for four causes of action: (1) aiding and abetting fraud, (2) aiding and abetting breach of fiduciary duty, (3) gross negligence, and (4) ordinary negligence. (*Id.* at 45-58.)

The Receiver amended his complaint after Spotex filed its first motion to dismiss, and Spotex thereafter filed a new motion for complete dismissal of the Receiver's amended complaint under Rule 12(b)(6) on several alternative grounds. The district court reached only one issue, immunity under the Communications Decency Act, and dismissed all claims against Spotex under that Act. (ECF No. 67 at 23-24.) The court then dismissed the rest of the defendants for other reasons.

## SUMMARY OF THE ARGUMENT

The district court correctly dismissed all claims against Spotex. This Court may affirm by the same path tread by the district court—the Communications Decency Act. Alternatively, the Court may affirm for various other reasons.

First, the district court correctly dismissed the claims under the Communications Decency Act. The Act immunizes providers of online computer services like Spotex from being held liable for others' content. Yet that is what the Receiver seeks. The Receiver wants to hold Spotex liable for misinformation communicated by the Receivership Entities to its investors through their criminal manipulation of information contained within Spotex's software. That fits within the immunity granted to computer services under the Act.

Second, the Receiver lacks standing to pursue common law tort claims against Spotex. The Receivership Entities were dominated and controlled by their defrauding owners and officers. The Entities, therefore, cannot be separated from the fraudsters, whose misconduct is im-

puted to the Entities.  In short, the Receiver bases his standing on injuries not to the Entities, but to the Entities' creditors, and that is not allowed.

Third, the Receiver failed to properly plead its negligence claims against Spotex.  There is no authority for imposing on Spotex a duty to have discovered and disclosed the fraudulent activities of the criminals running the Receivership Entities.

Fourth, the Receiver likewise failed to plead aiding and abetting claims against Spotex.  To begin with, this Court should not expand Florida law by recognizing this form of vicarious liability.  But even if expansion were warranted, the Receiver has still failed to plead the elements of actual knowledge and substantial assistance.

Finally, the district court properly dismissed the claims with prejudice.  The Receiver says he should have been given a chance to amend, but the Receiver never sought leave to amend.  A district court doesn't err by failing to give a plaintiff a chance to amend sua sponte.

**ARGUMENT**

**I.     The   Claims   Against   Spotex   Are   Barred   by   the Communications Decency Act.**

The district court correctly concluded that the Communications Decency Act bars the claims against Spotex.  Congress designed subsection 230(c)(1) of the Act to immunize interactive software providers from being held liable when acting as the vehicle for another's content.  Here, Spotex was a mere software conduit for the Receivership Entities' own deceptive content being sent to their investors.  Thus, the Receiver's claims fall within the Act's immunity ambit.

Although this Court has not analyzed the Act at great length, the circuits agree that subsection 230(c)(1)'s plain language requires three elements before immunity is triggered.  *See Henderson v. Source for Pub. Data, L.P.*, 53 F.4th 110, 119-20 & n.9 (4th Cir. 2022) (collecting cases); 47 U.S.C. § 230(c)(1).  Those elements include proof that (1) the defendant is a provider or user of an interactive computer service, (2) the plaintiff's claims seek to hold the defendant responsible as the publisher or speaker of "any information," and (3) such information was provided by another information content provider.  *Henderson*, 53 F.4th at 119.  As the Fourth Circuit recently summarized these elements,

9

These three requirements look first to the defendant's status (i.e., are they a provider or user of an "interactive computer service"), then to the kind of claim the plaintiff has brought (i.e., does the plaintiff treat the defendant as a publisher or speaker of information), and finally to the source of the information underlying the plaintiff's claim (i.e., who provided the information).

Below, the district court correctly concluded that the amended complaint revealed that every element was met. (ECF No. 67 at 15-24.)

To be clear, the Act creates "broad federal immunity" for defendants, which imposes pleading burdens on plaintiffs. *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006) (quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997)). And as *Zeran* in turn held, the burden is on the plaintiff to allege facts showing that the content for which the defendant is being held liable was the defendant's own content, rather than the content of another. *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 258 (4th Cir. 2009) ("Moreover, in view of our decision in *Zeran,* Nemet was required to plead facts to show any alleged drafting or revision by Consumeraffairs.com was something more than a website operator performs as part of its traditional editorial function."). It's the plaintiff's burden to allege facts "upon which

it could be concluded that it was plausible that [the defendant] was an information content provider." *Id.*

These pleading burdens make sense because "Section 230 immunity, like other forms of immunity, is generally accorded effect at the first logical point in the litigation process." *Id.* at 254. It should be resolved "at the earliest possible stage of the case because that immunity protects websites not only from 'ultimate liability,' but also from 'having to fight costly and protracted legal battles.'" *Id.* at 255 (quoting *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1175 (9th Cir. 2008) (en banc)).

This early decision is made in favor of immunity in close cases: "[T]he Circuits are in general agreement that the text of Section 230(c)(1) should be construed broadly in favor of immunity." *Force v. Facebook, Inc.*, 934 F.3d 53, 64 (2d Cir. 2019) (collecting cases). That broad reading of Section 230 means that "close cases . . . must be resolved in favor of immunity, lest we cut the heart out of section 230 by forcing websites to face death by ten thousand duck-bites, fighting off claims that they promoted or encouraged—or at least tacitly assented to—the illegality of third parties." *Roommates.com, LLC*, 521 F.3d at 1174.

The district court here followed these guides by making an early decision on immunity. The Receiver has failed to plead the *inapplicability* of this broad, Congressional grant of immunity, despite his burden and opportunity to do so. Moreover, the Receiver's complaint establishes all the required elements for immunity.

## A.    Spotex is an interactive computer service.

The amended complaint pleads that Spotex meets the first element of Section 230 immunity, since Spotex is an interactive computer service and an access software provider.

An "interactive computer service" is statutorily defined as "any information service, system, or *access software provider* that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." 47 U.S.C. § 230(f)(2) (emphasis added).

"Access software provider" has, in turn, its own statutory definition. It means "a provider of software (including client or server software), or enabling tools that do any one or more of the following: (A) filter, screen, allow, or disallow content; (B) pick, choose, analyze, or digest content; or

(C) transmit, receive, display, forward, cache, search, subset, organize, reorganize, or translate content." *Id.* § 230(f)(4).

The Receiver's brief affords no real discussion of these statutory definitions, but they're controlling.

First, the amended complaint alleges that Spotex is a software provider: "Spotex created the software that DaCorta used to conduct the doomed forex trading and was the primary conduit for third-party liquidity providers, meaning Spotex provided the electronic trading platform and access to liquidity that was necessary to carry out the Ponzi scheme." (ECF No. 36 at 15 ¶ 41.) In other words, Spotex provided software services.

Second, the amended complaint shows that Spotex was an *access software provider* because its software "receive[d]," "transmit[ted]," and "organize[d]" content. 47 U.S.C. § 230(f)(4)(C). As the amended complaint alleges, Spotex received adjustment requests from the Receivership Entities, which it incorporated into reports and then "publish[ed]" to the investors through automated processes. (ECF No. 36 at 35 ¶ 107, 40 ¶¶ 120-26.) Thus, Spotex was receiving content, organizing it in reports, and then transmitting it to others.

Finally, Spotex was not only an "access software provider" but also an "interactive computer service" because as an access software provider it enabled computer access through the internet. 47 U.S.C. § 230(f)(2). The amended complaint alleges that "Spotex maintained back-office services for the accounts for OIG and the Oasis Pools through www.spotex.com." (ECF No. 36 at 15 ¶ 41.) Spotex also "generate[d] online account records." (*Id.* at 25 ¶ 75; *accord id.* at 35 ¶ 106 ("Spotex provided a 'white label' software suite that would support ATC's clients and generate online account records with various back-office tasks for such clients.").) Spotex uploaded its reports to the investors' online accounts for viewing. (*Id.* at 35 ¶ 107.) In other words, the Spotex back office operates in the cloud.

When Congress defined "interactive computer service," it did so broadly. Spotex easily fits within the statutory definition, just as the district court found. (ECF No. 67 at 19.) The Receiver makes no effort to show otherwise.

**B. The Receiver's claims seek to hold Spotex responsible as the speaker or publisher of information.**

The district court correctly concluded that all the Receiver's claims against Spotex seek to hold Spotex responsible as the speaker or publisher of information. (*Id.* at 20.)

Although the "genesis" of Section 230 was a state-law defamation claim, its scope is far broader, extending to anti-discrimination law, fraud, and ordinary negligence claims. *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101 (9th Cir. 2009).

The amended complaint explicitly alleges Spotex's status as a publisher. The gravamen of the complaint is that Spotex was a conduit for false information provided by the Receivership Entities to their investors. As the conduit, the Receiver wants to hold Spotex liable for "publishing" false information to the investors:

- Spotex "would publish the fictitious profits (and remove the losses) to the online portal viewable by investors," (ECF No. 36 at 35 ¶ 107; *accord id.* at 43 ¶ 129 (Spotex "published fictitious trading profits for the investors' viewing"));

- Spotex's "online portal showed and published purported profitable trading for the benefit of the Oasis investors," (*id.* at 37 ¶ 112); and

- The published information was "central" to the Ponzi scheme, and it was "present[ed] and publish[ed] via Defendant Spotex's services" to the investors, (*id.* at 36 ¶ 110).

Spotex's Section 230 argument just accepts what the amended complaint says. The complaint alleges that Spotex published information to the investors, and that this published information had improper content. Even the Fourth Circuit, which takes a narrow[2] view of "speaker" and "publisher" status, would find this element met. *See Henderson*, 53 F.4th at 120-21 ("A claim treats the defendant 'as the publisher or speaker of any information' when it (1) makes the defendant liable for publishing

---

[2] *See, e.g., Bride v. Snap Inc.*, No. 2:21-CV-06680, 2023 WL 2016927, at *7 (C.D. Cal. Jan. 10, 2023) (suggesting that the *Henderson* test is narrower than the tests applied in the First and Ninth Circuits); *Divino Grp. LLC v. Google LLC*, No. 19-CV-04749, 2023 WL 218966, at *2 (N.D. Cal. Jan. 17, 2023) ("[T]he Fourth Circuit's narrow construction of Section 230(c)(1) appears to be at odds with Ninth Circuit decisions indicating that the scope of the statute's protection is much broader."); *Prager Univ. v. Google LLC*, 301 Cal. Rptr. 3d 836, 846 (Cal. Ct. App. 2022) ("*Henderson*'s narrow interpretation of section 230(c)(1) is in tension with the California Supreme Court's broader view . . . .").

certain information to third parties, and (2) seeks to impose liability based on that information's improper content.").

The Receiver overlooks all his "publisher" allegations against Spotex. He instead argues that Spotex was a *bad* publisher because it published false information. (Appellant's Br. at 44-45.) This is the same point the Receiver argued below, and which the district court correctly characterized as "circular." (ECF No. 67 at 20.) What the Receiver misses is that Section 230 doesn't ask whether the defendant is a good publisher or a bad one—this immunity statute only cares whether the defendant was in fact publishing. When the claim is that improper information of any kind has been published by the defendant, then this element is met. *Henderson*, 53 F.4th at 120-21.

## C. The relevant information was provided by another.

The final element tests whether the content published by the defendant was its own information or that of another. Section 230 doesn't protect defendants from liability for publishing their "own speech." *Monsarrat v. Newman*, 28 F.4th 314, 318 (1st Cir. 2022). Instead, the Act immunizes defendants who are speech conduits, reproducing or transmitting the information provided by someone else. In other words,

the final element asks *whose content is this really?* By the Receiver's own allegations, the information at issue here belongs to the criminals formerly at the helm of the Receivership Entities.

The Receiver agrees that the district court applied the right test but disagrees with how the court applied it. Section 230(c)(1) asks whether the defendant is being held liable as a publisher for "any information provided by another information content provider." As the Receiver correctly notes, the test to apply here is the "material contribution" test. (Appellant's Br. at 46-47.) Although this Court has not yet addressed the material contribution test, it is the test adopted by other circuits and applied by the district court below. *Henderson*, 53 F.4th at 127 (collecting circuits adopting the test and adopting it for the Fourth Circuit); (ECF No. 21-23).

In Section 230 cases, the material contribution test helps distinguish the defendant's content from content developed by someone else. *Henderson*, 53 F.4th at 128. A defendant is liable for content only if it "directly and materially contributed to what made the content itself unlawful." *Id.* at 127. So if a defendant offers users "neutral tools" that can be used for good or ill, the defendant has not materially contributed to

the content that a user creates with those tools. *Jones v. Dirty World Ent. Recordings LLC*, 755 F.3d 398, 416 (6th Cir. 2014); *Roommates.com*, 521 F.3d at 1169. Put another way, if the defendant "merely enables" the online posting or creation of content, the defendant retains its Section 230 immunity. *Nemet Chevrolet*, 591 F.3d at 254. The court below properly held that Spotex was a mere technology conduit for information created by the actors responsible for the fraud on their investors.

Often this test comes down to how much control the defendant is exercising. In *Roommates.com*, the defendant website *required* users to search for roommates using discriminatory criteria. 521 F.3d at 1169-70. Because the defendant exercised control over users' content by requiring them to use discriminatory criteria in their roommate search, the defendant's own conduct materially contributed to its users' speech, forfeiting the defendant's immunity. *Id.*

By contrast, the en banc Ninth Circuit explained that a similar defendant would retain its immunity so long as its neutral tools merely *allowed* users to discriminate, and the defendant's website did "not *require* the use of discriminatory criteria." *Id.* at 1169 (emphasis added). Spotex

did not require the criminals behind the Receivership Entities to create phony adjustments; they did so on their own.

Immunity also exists when a plaintiff complains that the defendant failed to exercise *more* control. As the First Circuit has explained, "courts have rejected claims that attempt to hold website operators liable for failing to provide sufficient protections to users from harmful content created by others." *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 21 (1st Cir. 2016). Accordingly, even if the Receiver argues that Spotex *should have* placed more controls on the criminals behind the Receivership Entities, limiting their ability to make adjustments or use the API, that argument would not defeat Section 230 immunity.

This eye toward control is also supported by Congress's stated intent. Within the Act, Congress determined that "[i]t is the policy of the United States . . . to encourage the development of technologies which maximize user control over what information is received by individuals, families, and schools who use the Internet and other interactive computer services." 47 U.S.C. § 230(b)(3). So when a software provider gives its users control over the software system, like Spotex did here, Congress

expects the courts to shield the provider from liability when a user abuses the system.

Below, the district court faithfully put Congress's policy into practice. Spotex did not materially contribute to the impropriety of the reports it published to the investors at the behest of the Receivership Entities. The message in the reports was the message of the criminals behind the Receivership Entities, not of Spotex.

The Receivership Entities controlled their message. Spotex generated reports at the Receivership Entities' "request." (ECF No. 36 at 39 ¶ 116.) At first, the Receivership Entities manually adjusted the reports to "conceal[] the trading losses from investors and populate[] fictitious or false profits to investors." (*Id.* at 41 ¶ 121.) This became tedious for the Receivership Entities as the Ponzi scheme grew. (*Id.*) They asked ATC who asked Spotex how the software could be used so that the Receivership Entities' adjustments would be automatically reflected in the reports pushed out by Spotex. (*Id.* ¶¶ 122-26.) Ultimately, the Receiver alleges that the falsified investor account records were created by the Receivership Entities and the schemers. (*Id.* at 45 ¶ 133 (alleging that they

"create[ed] false investor account records that fully masked, altered, covered-up, disguised, and concealed massive trading losses and populated false profits").)

As the district court acknowledged, the Receiver doesn't allege that Spotex changed, altered, or otherwise materially contributed to the "adjusted" reports that the Receivership Entities directed to their investors. (ECF No. 67 at 23.) There is no allegation that Spotex played any role in determining what the adjustments would be. (*Id.*) Unlike the defendant in *Roommates.com*, Spotex did not require the Receivership Entities to speak to their investors in any particular way, and Spotex certainly didn't require the Entities to lie. Instead, Spotex was a conduit for the information that the Receivership Entities wanted its investors to receive. Spotex merely provided the software—the neutral tools—for the Receivership Entities' own content.

\* \* \*

The point of Section 230 is to ensure that the person held liable for content is the person actually responsible for it, and to avoid stifling useful technological growth out of fear of liability for the actions of third parties outside of a developer's control. The district court correctly applied

the Act in an uncontroversial way to immunize Spotex, since Spotex was no more than a neutral, software-intermediary for misinformation propagated by the criminals fraudulently operating the Receivership Entities.

## II. The Receiver Lacks Standing to Pursue Any Claims Against Spotex.

The district court correctly dismissed all claims against Spotex under Section 230, but Spotex also sought dismissal for lack of receiver standing.  This Court may affirm on this alternative ground.  *See United States v. Thomas*, 32 F.4th 1073, 1077 (11th Cir. 2022).

The Receivership Entities have not been injured by Spotex, so the Receiver, who steps into their shoes, likewise lacks standing to sue Spotex for anything.

### A.  The *in pari delicto* defense doesn't matter.

The Receiver's argument about the *in pari delicto* doctrine is a strawman if ever there were one.  As the Receiver states, no party argued *in pari delicto* in the district court.  (Appellant's Br. at 27.)  The Receiver even concedes that the district court didn't rely on the defense.  (*Id.* at 25 ("[T]he District Court did not expressly invoke the *in pari delicto* affirmative defense in the Order . . . .").)  Indeed, the district court was explicit

about that: "the doctrine of *in pari delicto* does not apply." (ECF No. 67 at 28-29.)

The Receiver seems to conflate the *in pari delicto* defense with receivership standing. But the two issues are distinct, as this Court has already explained: "[The Receiver's] ability to pursue these claims is barred not by the doctrine of *in pari delicto*, but by the fact that the Receivership Entities were controlled exclusively by persons engaging in and benefitting from the Ponzi scheme, and so the Receivership Entities were not injured by that scheme." *Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1308 (11th Cir. 2020).

Ultimately, the district court didn't err by raising the *in pari delicto* defense sua sponte because it never raised the defense at all.

## B. The Receiver lacks standing for its claims against Spotex.

Rather than rely on the *in pari delicto* defense, the district court correctly held that the Receiver lacks standing to pursue common law torts against Spotex.

In *Isaiah*, this Court took up the issue of receiver standing under Florida law, asking when the misconduct of entities in receivership is imputed to the receiver and thereby depriving the receiver of standing. *Id.*

at 1305. The standing question arises because the receiver possesses only the causes of action possessed by the persons or entities in receivership. *Id.* The receiver lacks standing to pursue harms done to the creditors of the receivership entities, who the receiver does "not represent." *Id.* at 1306, 1310.

The first question for receiver standing is to ask what types of claims the receiver is pressing. Receiver standing for fraudulent transfer claims is analyzed differently than standing for common law torts. *Id.* at 1306 (distinguishing the two).

For torts,[3] the Receiver lacks standing if "the Ponzi schemers' fraudulent acts are imputed to the Receivership Entities." *Id.* at 1306; *accord Freeman v. Dean Witter Reynolds, Inc.*, 865 So. 2d 543, 551 (Fla. Dist. Ct. App. 2003) (contrasting receivership standing for torts and fraudulent transfer claims). To avoid imputation, the Receiver must allege that the receivership entities "had at least one innocent officer or

---

[3] The high bar for receivership standing for common law torts is implicitly conceded by the Receiver's own amicus, the National Association of Federal Equity Receivers. The Association's amicus brief expressly limits itself to advocating for receiver standing against ATC for fraudulent transfer claims. (Amicus Br. at 1-2.) The Association makes no argument for receiver standing as to Spotex or for tort claims.

director and were thus honest corporations injured by the actions of a few corrupt employees." *Isaiah*, 960 F.3d at 1308. The goal of this analysis is to determine whether the "intentional torts of the insiders cannot be separated from those of the corporation itself and the corporation cannot be said to be an entity separate and distinct from the individual tortfeasors." *Id.* at 1306.

For that reason, "a sham corporation created as the centerpiece of a Ponzi scheme" will not permit receiver standing for torts. *Id.* at 1307 (quoting *Freeman*, 865 So. 2d at 551). If the schemer "asserted complete control over the Receivership Entities in operating the Ponzi scheme," or if the "the Receivership Entities were wholly dominated by persons engaged in wrongdoing," then there cannot be receiver standing. *Id.*

The Receiver has sued Spotex only for common law torts: aiding and abetting fraud and breach of fiduciary duty, and negligence. (ECF No. 36 at 45-49, 52-58.) The Receiver's claims, however, are merely seeking recovery for injuries to the Receiver's investors and other creditors; the Receiver is not truly seeking to recover from Spotex for injuries to the Receivership Entities.

Indeed, as the amended complaint alleges, the Receivership Entities were sham corporations with no separateness from their criminal, fraudster owners. The criminals behind the Receivership Entities actually controlled the Entities. (*Id.* at 7 ¶¶ 14-19.) These owners commingled and misappropriated the Receivership Entities' funds. (*Id.* at 45 ¶ 133, 47 ¶ 144.) The Receivership Entities were dependent on their owners, and these owners "had domination and influence" over the Receivership Entities. (*Id.* ¶ 141.) The owners caused the Entities to share the same office space and employees, and to operate under the same trade name. (*Id.* at 18 ¶ 51.) In short, the owners so dominated the Entities that their corporate separateness was an outward sham while they were in fact "operate[d] as one common enterprise." (*Id.* ¶ 52.)

On appeal, the Receiver argues that it made some marginal allegations about innocent shareholders for some Receivership Entities, which should suffice for standing. (Appellant's Br. at 28-33.) But the premise of that argument is wrong. As the district court explained, *Isaiah* did not hold that pleading "one honest member of the board of directors or an innocent stockholder" is enough for receiver standing. (*Id.* at 27.) Indeed,

*Isaiah* sought to determine whether the receivership entities were controlled and dominated by the schemers, or operated as sham corporations with no legitimate business. *Isaiah*, 960 F.3d at 1306-08.

Both *Isaiah* and the district court's decision make sense. The root of this inquiry is a Florida decision, *Freeman v. Dean Witter Reynolds, Inc.*, 865 So. 2d 543 (Fla. Dist. Ct. App. 2003). In *Freeman*, the receiver brought sued the defendants for aiding and abetting the receivership entities' Ponzi scheme, just like the Receiver does here against Spotex. *Id.* at 548. The premise of those claims was that the defendant had a duty to report to the corporation that the schemers were defrauding the corporation's customers. *Id.* at 547, 552. That's the same premise in this case—a duty to report the scheme to the Receivership Entities. (ECF No. 36 at 45 ¶ 135, 48 ¶ 146.)

*Freeman* reasoned that receivership standing made no sense for that purported duty. Besides the common law imposing no such duty, there was no innocent decisionmaker "within the corporation to whom such conduct could be reported." *Freeman*, 865 So. 2d at 552. The receivership entity was the "robot or zombie" under the spell of the schemers, so reporting the scheme to the "robot or zombie" would've accomplished

nothing. *Id.* Or, as the district court here put it, there was no one within the Receivership Entities to which a report could've been made: the companies were such shams that they "did not exist." (ECF No. 67 at 28.)

The existence of innocent insiders is, therefore, a necessary but insufficient ingredient of receiver standing. Alternatively, if this Court were to set aside *Isaiah* and *Freeman*'s discussions about domination and control, and focus only on the existence of an honest director or shareholder, affirmance would still be warranted. The amended complaint fails even that low bar.

In the amended complaint, the Receiver identified the Receivership Entities as "Oasis International Group, Limited ('OIG'), Oasis Management, LLC ('OM'), Satellite Holdings Company ('Satellite Holdings'), and their affiliates and subsidiaries." (ECF No. 36 at 1, 5 ¶ 8.) The Receiver makes different allegations about each entity.

**Satellite Holdings.** The amended complaint says little about Satellite Holdings. The corporation's sole director was Haas, a criminal schemer. (*Id.* at 7 ¶ 16.) The complaint never alleges anything about the corporation's shareholders. Specifically, and most importantly for the

applicable standing analysis, it never alleges it had innocent shareholders at any time.

**OIG.** The Receiver puts more effort into his OIG allegations, but still comes up short. The Receiver alleges that OIG had six innocent shareholders when it was formed. (*Id.* at 16 ¶ 53.) OIG was formed in 2013 by the schemers. (*Id.* at 7 ¶ 14.) Afterward, the innocent shareholders had their shares redeemed for cash. (*Id.* at 16 ¶ 53.)

These allegations aren't sufficient because it's irrelevant whether there were *ever* innocent shareholders. Instead, there must have been innocent shareholders in 2018, when Spotex allegedly aided the Ponzi scheme. (*Id.* at 42 ¶ 124.) If there were no innocent insiders when Spotex's duty to report arose, then the Receivership Entities couldn't have been injured by the lack of whistleblowing. *Freeman*, 865 So. 2d at 552.

Next, the Receiver tries alleging that it had some number of *preferred* shareholders from 2013 to 2017. (*Id.* at 19 ¶ 56.) But these shares were all redeemed or turned into promissory notes at some undisclosed time before the end of 2017. (*Id.*) The preferred shareholders had no control over OIG, since their shares had no voting rights. (*Id.* ¶ 54.)

Again, this allegation ignores the relevant period and the magnitude of the grip that the criminal fraudsters had over the Receivership Entities. Spotex's hypothetical reporting duty could not have arisen before 2018.

Anyway, the allegation about these preferred shareholders is a red herring. Although *Isaiah* and *Freeman* just mention shareholders generally, they cannot be referring to preferred shareholders without voting rights. The thrust of the cases is to find a corporate insider who could conceivably act on the defendant's whistleblowing. A preferred shareholder without voting rights cannot be such a person, for he has no ability to act on the report, even in concert with other minority shareholders who likewise lack voting rights.

**OM.** Finally, the Receiver spares a footnote in the complaint for the last entity, OM. (*Id.* at 20 ¶ 56 n.4.) The Receiver likens OM to OIG, but the Receiver offers even fewer details. (*Id.*) OM is a limited partnership, rather than a corporation. (*Id.*) It was formed in 2011. (*Id.* at 25 ¶ 11.) At some unstated point in time, OM had some unstated number of

innocent limited partners. (*Id.* 20 ¶ 56 n.4.) And at some further un-stated time, the ownership interests of the limited partners were all con-verted to cash. (*Id.*)

That will not suffice for standing. It's the Receiver's burden to prove his standing. *Thakkar v. Bay Point Cap. Partners, LP (In re Bay Circle Props., LLC)*, 955 F.3d 874, 877 (11th Cir. 2020) ("At the pleading stage, plaintiffs must clearly allege facts demonstrating each element of standing." (cleaned up)). Intentionally vague allegations do not satisfy that burden. *Tokyo Gwinnett, LLC v. Gwinnett Cnty.*, 940 F.3d 1254, 1263-64 (11th Cir. 2019) (the complaint needs to make standing more than imaginable). The Receiver did not plead standing for OM.

Like this Court explained in *Isaiah*, "[t]o allow receivers to bring these types of lawsuits purportedly for the benefit of the entities' credi-tors is really to usurp the claims that properly belong to those creditors." 960 F.3d at 1310. The Receiver must show that the Receivership Entities were harmed by Spotex, but such an allegation makes no sense. Presum-ably, the only way to measure the harms to the Receivership Entities is by measuring the harms to their investors. But if that is the harm, the injury was to the investors, not the Receivership Entities. The Receiver

isn't the investors' "class representative" and any recovery becomes "the property of the Receivership Entities." *Id.* at 1306, 1310.

If the victims believe they have valid claims against Spotex, they will bring them. Given the weakness of the claims on the merits, *see infra* Argument §§ III-IV, it's unsurprising that none have sued.

## III. The Receiver Did Not Plausibly Plead Negligence Claims Against Spotex.

In the Receiver's negligence and gross negligence claims against Spotex, the standing issue becomes readily apparent. These negligence claims hinge on a supposed duty owed by Spotex to the Receivership Entities to stop or report the Entities' own misconduct. Besides no duty existing, the negligence claims also reveal that the Receiver is merely trying to sue Spotex as a class representative for the investors, despite lacking standing to do so.

Duty is a question of law reserved for the Court. *Rehab. Ctr. at Hollywood Hills, LLC v. Fla. Power & Light Co.*, 299 So. 3d 16, 19 (Fla. Dist. Ct. App. 2020). A duty can arise from any of four sources: "(1) legislative enactments or administration regulations; (2) judicial interpretations of such enactments or regulations; (3) other judicial precedent; and (4) a duty arising from the general facts of the case." *Clay Elec. Co-*

*op., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003) (quoting *McCain v. Fla. Power Corp.,* 593 So. 2d 500, 503 n.2 (Fla. 1992)).

Below, the Receiver relied only on the fourth source, the general facts of this case. The Receiver argued that Spotex had a duty to report the wrongdoing of the fraudsters to the Receivership Entities or others, (ECF No. 36 at 53 ¶ 170, 56 ¶ 185), to comply with unidentified "minimum industry standards" to take some unidentified actions, (*id.* at 53 ¶ 171), and a duty not to allow its software to be used for fraudulent purposes.

The Receiver, however, fails to allege that Spotex did anything to create a risk of foreseeable harm on the Receivership Entities by merely allowing ATC to contract for Spotex's white-label software services.

First, the Receiver overlooks that the relevant duty must run from the defendant to the plaintiff—here, from Spotex to the Receivership Entities. "[I]t is not sufficient to show that the defendant owed to another person or class of persons a duty which, had it been performed, would have prevented the injury of which complaint is made by the plaintiff." *Kowkabany v. Home Depot, Inc.*, 606 So. 2d 716, 720 (Fla. Dist. Ct. App. 1992). But Spotex only had a relationship with ATC.

Second, the duty that the Receiver would have the Court impose on Spotex runs up against an analogous duty that courts have refused to impose on banks. A district court in this circuit has helpfully summed up the law from Florida (and the application of Florida law by this Court). *See Wiand v. Wells Fargo Bank, N.A.*, 86 F. Supp. 3d 1316, 1324 (M.D. Fla. 2015), *aff'd*, 677 F. App'x 573 (11th Cir. 2017).

*Wiand* rejected the same kind of duty argument made by the same receiver as in this case. Arthur Nadel perpetrated a Ponzi scheme on investors through hedge funds, which had accounts at Wells Fargo. *Id.* at 1319. Wells Fargo also invested in the hedge funds and lent them money. *Id.* The Ponzi scheme eventually collapsed. *Id.* Wiand was appointed as the receiver for the hedge funds, and he sued Wells Fargo for negligence (among other failed claims). *Id.* at 1320.

There, as here, the essence of the Receiver's claim was that Wells Fargo had a duty to "monitor Nadel's account activities." *Id.* at 1322. But the court reaffirmed that Florida law did not support "such a 'nebulous' duty." *Id.* (quoting *Freeman*, 865 So. 2d at 552). The court also noted that this Court had already held that banks don't have an "independent duty to supervise transactions on a customer's account." *Id.* (quoting

*Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 947 (11th Cir. 2014)).  The *Wiand* court concluded, and this Court affirmed, that Wells Fargo did not owe any duty to monitor its customers' accounts.  The court held that Wells Fargo did not owe any duty to its non-customers either.  *Id.* at 1324; *accord Rehab. Ctr.*, 299 So. 3d at 23 ("Similarly, in this case, as in *Levy*, [defendant power company] owed no duty to Cooper, a noncustomer, who was injured by [defendant's] failure to restore power before her injury occurred.").  Nonetheless, the Receiver is back espousing the same flawed duty theory against Spotex that has already been rejected.

This case is no different than *Wiand*.  Spotex did not owe its customer, ATC, a duty to monitor how its software was being used, nor did Spotex owe a duty a step further, to the Receivership Entities, to monitor the conduct of the criminals operating those Entities.  The only legally cognizable duty is the one between the Receivership Entities and their investors—and that is not a duty for which Spotex is responsible.  Spotex never undertook to be an insurer against fraud committed by its customers, let alone the customers of its customer, as with the Receivership Entities.

Because Spotex owed no duty to the Receivership Entities to discover and report the fraud of the Entities' own officers and owners, the Receiver's negligence and gross negligence claims were properly dismissed.

## IV. The Receiver Did Not Plausibly Plead Aiding and Abetting Claims Against Spotex.

The Receiver's claims for aiding and abetting also fail on the merits. First, such claims do not exist. Second, even if they do, the Receiver hasn't pleaded the elements of knowledge and substantial assistance.

### A. This Court should decline to recognize the aiding and abetting torts because the Florida Supreme Court has not recognized them.

In a diversity case, it is the duty of this Court to apply the law as would the Florida Supreme Court. *State Farm Fire and Cas. Co. v. Steinberg*, 393 F.3d 1226, 1231 (11th Cir. 2004). That court, however, has never recognized aiding and abetting liability for fraud or breach of fiduciary duty. Without guidance from the Florida Supreme Court, this Court should make the more conservative *Erie* guess that such liability does not exist.

When this Court is called to make an *Erie* guess, it acts conservatively, being "chary" of making any kind of "substantive innovation."

*Rhynes v. Branick Mfg. Corp.*, 629 F.2d 409, 410 (5th Cir. 1980).[4] The less "presumptuous" route is to refrain from imposing new forms of liability, not yet adopted by the Florida Supreme Court. *Id.* Other circuits take that same conservative position for *Erie* predictions. *See, e.g., Grayson v. Anderson*, 816 F.3d 262, 272 (4th Cir. 2016) ("[F]ederal courts sitting in diversity rule upon state law *as it exists* and do not surmise or suggest its expansion." (cleaned up)); *Quality Cleaning Products R.C., Inc. v. SCA Tissue N. Am., LLC*, 794 F.3d 200, 207 (1st Cir. 2015) ("A federal court sitting in diversity cannot be expected to create new doctrines expanding state law."); *Northview Motors, Inc. v. Chrysler Motors Corp.*, 227 F.3d 78, 92 n.7 (3d Cir. 2000) ("[A] federal court in a diversity case should be reluctant to expand state common law."); *Bellum v. PCE Constructors, Inc.*, 407 F.3d 734, 742 (5th Cir. 2005) ("This court will not use its diversity jurisdiction to expand state law beyond its presently existing boundaries." (cleaned up)).

Turning to the question at hand, this Court has expressly noted the unclarity in this area of the law, and has declined to decide whether the

---

[4] *Rhynes* is binding in this Circuit, since it was a decision of the Fifth Circuit decided before October 1, 1981. *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Florida Supreme Court would recognize it. *Lamm*, 749 F.3d at 950 n.9 ("We note, as did the district court in *Platinum Estates, Inc.,* that it is unclear whether aiding and abetting fraud exists as a cause of action in Florida."). Although lower some federal district courts and some of Florida's intermediate appellate courts have assumed the existence of such liability, *id.*, the Florida Supreme Court hasn't spoken on the issue.

The Fifth Circuit recently addressed the same question arising under Texas law. *See Christopher v. Depuy Orthopaedics, Inc.*, 888 F.3d 753, 781 (5th Cir. 2018). The Texas Supreme Court had never recognized aiding and abetting liability for civil claims. *Id.* The parties cited various decisions from other courts going both ways on the question. *See id.*

But the Fifth Circuit explained that such "debate is beside the point. When sitting in diversity, a federal court exceeds the bounds of its legitimacy in fashioning novel causes of action not yet recognized by the state courts." *Id.* The *Erie* doctrine requires federal courts "to wager a guess about how the state court might fill the interstices of existing doctrinal frame-works; inventing a new framework *ex nihilo* is another matter entirely." *Id.*

For the same reason that the Fifth Circuit refused to recognize aiding and abetting liability in *Christopher*, this Court should take the same path, if there's reason to reach this third alternative ground for affirmance.

**B.    The Receiver did not plead actual knowledge or substantial assistance.**

Even if this Court decides to recognize this form of liability under Florida law, the Receiver's claims still deserve dismissal.

For courts that have recognized it, aiding and abetting liability has three elements that the plaintiff must allege and prove: "(1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by the alleged aider and abetter; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor." *Taubenfeld v. Lasko*, 324 So. 3d 529, 543-44 (Fla. Dist. Ct. App. 2021) (quoting *Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904, 906 (11th Cir. 2012)).  Spotex challenges elements (2) and (3).

The Receiver had to plead those elements with particularity under Rule 9(b).  *See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1064 (11th Cir. 2007) (holding that a claim for aiding and abetting fraud must

conform to Rule 9(b)); *Krys v. Pigott*, 749 F.3d 117, 129 (2d Cir. 2014) (same for aiding and abetting both fraud and breach of fiduciary duty).

### 1. Spotex did not have actual knowledge of the relevant misconduct.

For aiding and abetting either fraud or breach of fiduciary duty, the Receiver had to plead that Spotex actually knew "of the underlying fraud or breach of fiduciary duty." *Lamm*, 749 F.3d at 950. Conclusory allegations of knowledge are insufficient; facts are needed to establish the knowledge. *See id.*

This is a high burden. It is not enough for the facts to reveal that Spotex "should have known" of the fraudsters' misconduct. *Id.* (quoting *Platinum Ests., Inc. v. TD Bank,* No. 11-60670-CIV, 2012 WL 760791, at *3 (S.D. Fla. Mar. 8, 2012)). Nor is it sufficient for the Receiver to rely on "atypical activities" or other "red flags." *Id.* Even facial defects that could have put Spotex on notice are inadequate to prove actual knowledge, unless the Receiver also proves that Spotex had some duty to scrutinize the information it could access. *Lamm*, 749 F.3d at 951; *accord Lawrence*, 455 F. App'x at 907; *Groom v. Bank of Am.*, No. 8:08-CV-2S67-JDW-EAJ, 2012 WL 50250, at *3 (M.D. Fla. Jan. 9, 2012).

The facts alleged in the amended complaint fail this standard. The Receiver alleges that defendant Manoukian emailed Spotex and asked whether some Receivership Entities could use Spotex's API,[5] allowing the Entities to change from manually adjusting the reports for the investors' to doing so automatically. (ECF No. 36 at 41 ¶ 123.) Spotex responded with a three-sentence email stating this could be done with a master login. (*Id.* ¶ 124.)

According to the Receiver, this email exchange is "crystal-clear evidence" of Spotex's knowledge of the Ponzi scheme. (*Id.* at 43 ¶ 127.) But all Spotex did was let a technical support employee answer an email from Manoukian about how to use Spotex's preexisting application programing interface—the same API that Spotex makes available to all its customers. The complaint doesn't plead any red flags, and, even if it did, such constructive knowledge doesn't meet the actual-knowledge threshold for aiding and abetting liability.

---

[5] This was not a request for customization, but a request to use a preexisting API. An application programing interface, or "API" for short, is a way for two or more computer programs to communicate with each other. It is a type of software interface, offering a service to other pieces of software.

Below, the Receiver tried overcoming this infirmity through reliance on *Allied Irish Banks, P.L.C. v. Bank of Am., N.A.*, No. 03-cv-3748, 2006 WL 278138 (S.D.N.Y. Feb. 2, 2006). Besides applying New York rather than Florida law, the differences between that case and this one are dispositive.

In *Allied Irish Banks*, a rogue employee defrauded his employer of hundreds of millions of dollars. *Id.* at *1. After the employee went to jail, the employer sued Bank of America for allegedly helping the rogue employee pull off his scheme by providing foreign exchange services and concealing reports that should have gone to the employer. *Id.* at *1-4. The bank challenged the knowledge element for the aiding-and-abetting claim. *Id.* at *11. But the district court denied the motion to dismiss because the rogue employee had actually told the bank to omit information in its reports to the employer because "[the rogue employee] sought to conceal such information from his employer." *Id.* Because the bank helped the employee conceal this information, and knew the employee's motivation for his requests, the employer had sufficiently alleged the bank's actual knowledge of the scheme. *Id.*

Not so here.  Nowhere does the Receiver allege that Spotex had actual knowledge of the Ponzi scheme.  Instead, all the Receiver alleges against Spotex is that it had information—a request for an API that Spotex makes readily available to all users of its platform—from which it should have grown a hunch that something was amiss.  Such "constructive" suspicions are not actual knowledge.

Besides, the Receiver overlooks that *Allied Irish Banks* involved a rogue employee.  By contrast, in this Ponzi scheme the fraudsters and the companies they controlled were alter egos.  Spotex did not deal with the Receivership Entities directly—its customer was ATC.  But even if Spotex had dealt with them directly, the individuals acting on behalf of the Receivership Entities did so with the Receivership Entities' actual authority: the schemers dominated and controlled the Receivership Entities, with the Entities having no separate life of their own.  (ECF No. 36 at 46 ¶¶ 140-44.)

As this Court has explained in another aiding and abetting case, a business like Spotex only has responsibility for making sure that a customer's agents are acting with authority.  *O'Halloran v. First Union Nat.*

*Bank of Fla.*, 350 F.3d 1197, 1205 (11th Cir. 2003).[6]  Companies have a right to rely on the authority of their customers' agents; doing so "does not raise a plausible inference that [Spotex] knew of [the agents'] wrong-doing." *Lamm*, 749 F.3d at 951.  Spotex, therefore, could rely on the authority of the schemers when the schemers and their businesses exploited Spotex's software to defraud the investors.

On top of all these problems, liability for aiding and abetting the breach of fiduciary duty has a final hurdle for the Receiver.  Part of the underlying misconduct of which Spotex had to know was that a fiduciary relationship existed between the Receivership Entities and the schemers.  *See, e.g.*, *Groom* 2012 WL 50250, at *3.  Yet even the Receiver's conclusory allegations of knowledge fail to attribute this knowledge to Spotex.  (ECF No. 36 at 47 ¶ 145.)

---

[6] "For example, if an employee is sent to the bank to make a withdrawal from the company's account and to bring the funds back to the corporate office, but instead the employee takes the money and flees to Paraguay, the bank is not responsible for the employee's actions." *O'Halloran*, 350 F.3d at 1205.

### 2. Spotex did not render substantial assistance to the schemers.

The other problem for the Receiver is the lack of any substantial assistance from Spotex to the Entities' schemers.

The major problem for the Receiver is that it seeks to hold Spotex liable not for assistance that it gave but for steps it failed to take. The crux of the Receiver's aiding and abetting claims is a failure to act. The Receivership Entities aim to impose vicarious liability on Spotex for fraud and breach of fiduciary duty because Spotex "failed" to "disclose" the Receivership Entities' own misconduct to someone besides those Entities. (ECF No. 36 at 45 ¶ 135, 48 ¶ 146.)

This theory fails because Spotex can be held liable for a failure to act *only if* it had a legal duty to act. As this Court has held, "[s]ubstantial assistance occurs when a defendant affirmatively assists, helps conceal or *fails to act when required to do so*, thereby enabling the breach to occur. Mere inaction constitutes substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff." *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1098 (11th Cir. 2017) (cleaned up; emphasis added).

Florida courts have recognized the same point.  *See, e.g., ZP No. 54 Ltd. P'ship v. Fid. & Deposit Co. of Md.*, 917 So. 2d 368, 373 (Fla. Dist. Ct. App. 2005).  In *ZP*, the plaintiff property owner sued a construction performance bonding company when the owner discovered a bid-rigging scheme between its own employee and the general contractor.  *Id.* at 369-70.  The liability theory against the bonding company was that it provided substantial assistance to the scheme by providing a bond, even when it should have realized that the general contractor (and the owner's employee) couldn't be trusted.  *Id.* at 370.  But the District Court of Appeal held that the bonding company had no duty to discover or report the fraudulent scheme.  *Id.* at 373.  Issuing the bond was never intended to vouch for the honesty of the owner's own employees or the financial sensibility of hiring the general contractor.  *Id.*

So too here.  Spotex provided software services to ATC, who in turn provided them to its customers, the Receivership Entities.  Spotex had no duty to discover the Ponzi scheme of the Receivership Entities' criminal owners, nor did it have any duty to report to the Receivership Entities (or anyone else) what those Entities already knew, since the Receivership Entities and the fraudsters are the same.  (ECF No. 36 at 46 ¶¶ 140-43.)

Without a duty to act, Spotex's passive provision of routine business services to ATC cannot constitute substantial assistance. *See also Groom* 2012 WL 50250, at \*4 ("But an allegation of the failure to act, absent a duty to act, is not substantial assistance. And Plaintiffs have not pled sufficient facts to demonstrate that Defendant banks owed such a duty." (cleaned up)); *Hines v. FiServ, Inc.*, No. 808-CV-2569-T-30AEP, 2010 WL 1249838, at \*4 (M.D. Fla. Mar. 25, 2010) ("However, a failure to act, absent a duty to act, is not substantial assistance."); *In re Palm Beach Fin. Partners, L.P.*, 517 B.R. 310, 348 (Bankr. S.D. Fla. 2013) ("[S]tate and federal courts generally have held that a defendant's failure to act does not constitute substantial assistance." (cleaned up)).

Because the Receiver cannot show that Spotex had any duty to act, its aiding and abetting claims fail on the merits. As in *ZP*, the Receiver cannot recast its claims as being based on affirmative action—there the issuance of performance bonds, here the provision of software to ATC—when the heart of the claim is the failure to stop or disclose a fraudulent scheme.

Even if this Court were to allow such revisionist history, it would do the Receiver no good. The only allegation left standing is an email

from Spotex to Manoukian informing him of a preexisting software func-
tion to automize modifications to investor accounts. (ECF No. 36 at 41
¶¶ 123-24.) That email about an API available to all Spotex customers
does not rise to the level of the *substantial* assistance necessary to impose
liability upon Spotex for aiding and abetting.

A district court in this circuit has helpfully summarized the law:

> [S]ubstantial assistance will not be found where the amount
> of assistance alleged is minor in comparison to the massive
> scope of the overall fraudulent scheme. To determine whether
> a defendant provided substantial assistance, courts examine
> a variety of factors including the nature of the act encouraged,
> the amount of assistance given by the defendant, his presence
> or absence at the time of the tort, and his relation to the other
> and his state of mind. Additionally, when the alleged aider
> and abetter is not an integral part of the underlying violation,
> courts must also consider the potentially devastating impact
> aiding and abetting liability might have on commercial rela-
> tionships.

*Richter v. Wells Fargo Bank NA*, No. 2:11-CV-695-FTM-29, 2015 WL
163086, at *3 (M.D. Fla. Jan. 13, 2015) (cleaned up).

Those points are dispositive here. The criminal schemers that
owned and controlled the Receivership Entities pulled off a massive and
complex fraud, orchestrated across many years, involving many inves-
tors, and an array of different fraudulent vehicles. Spotex's role was con-
fined to providing white label software (that is, branded by someone else,

not Spotex) to ATC. When the issue of modifying customer-facing information arose, Spotex's only role was answering a question from ATC about how its software worked. If that counts as assistance at all, it is certainly insubstantial "in comparison to the massive scope of the overall fraudulent scheme." *Id.*

* * *

Spotex didn't aid and encourage the schemers in a Ponzi scheme. Spotex didn't know—and had no reason to know—what a group of criminals misusing the Receivership Entities was up to. Spotex merely provided its normal, white label software and standard API to its own customer, ATC, which wasn't one of the schemers.

The elements for aiding and abetting must be strictly observed, lest courts unleash a "potentially devastating impact" on "commercial relationships." *K & S P'ship v. Cont'l Bank, N.A.*, 952 F.2d 971, 980 (8th Cir. 1991). That warning is especially apt here, since the Florida Supreme Court hasn't adopted this form of liability.

## V. The District Court Didn't Owe the Receiver a Chance to Amend Because the Receiver Never Asked for It.

The Receiver's "thirteenth hour" request for leave to amend in this Court is too late. The law in this circuit is clear: "A district court is not

required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court." *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc). In other words, you don't get what you don't ask for.

When hit with Spotex's initial motion to dismiss, the Receiver filed his amended complaint without responding to the motion. When Spotex moved to dismiss the amended complaint, the Receiver never sought leave to amend. Even after the motion was granted, the Receiver still did not move the district court for leave to amend, which he could have done in order to remedy the defects in the pleading noticed by the district court, if the Receiver believed that he had the ability to do so. *See Czeremcha v. Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO*, 724 F.2d 1552, 1556 (11th Cir. 1984). The logical conclusion from this procedural history is that further amendment would be futile.

And there is even more history buttressing futility. Before Spotex moved to dismiss the original complaint, Spotex's counsel sent a very detailed meet-and-confer letter to the Receiver's counsel, beyond what was required by the district's local rules. (ECF No. 32-2); M.D. Fla. L. R.

3.01(g).  The later amendment, however, failed to cure the deficiencies, and the Receiver stuck by his amended pleading in the face of the second motion to dismiss.

Ironically enough, this same issue arose in *Isaiah*, regarding receiver standing.  *Isaiah*, 960 F.3d at 1308 n.9.  There, the district court dismissed the complaint with prejudice without allowing a chance to amend.  *Id.*  Because the Receiver was represented by counsel, and had not sought leave to amend, this Court applied *Wagner* and held that the district court could not have erred by dismissing the complaint with prejudice.  *Id.*

As the district court correctly concluded, the second version of the complaint still failed to state a claim.  The Receiver knew the problems with his pleadings all along the way.  Now he is out of chances.  This Court should not provide the Receiver another bite at the apple when no amount of revision can fix the unfixable.

## CONCLUSION

The judgment of the district court should be affirmed.

/s/ Matthew S. Adams
Matthew S. Adams
FOX ROTHSCHILD LLP
49 Market Street
Morristown, New Jersey 07960
(973) 992-4800

Troy Shelton
FOX ROTHSCHILD LLP
434 Fayetteville Street, Suite 2800
Raleigh, North Carolina 27601
(919) 755-8700

*Counsel for Spotex LLC*

# CERTIFICATE OF COMPLIANCE

The undersigned certifies that the foregoing Brief of Appellee complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 10,218 words, excluding the parts of the Brief exempted by Fed. R. App. P. 32(f).

The undersigned further certifies that this Brief of Appellee complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this Brief has been prepared in a proportionally spaced typeface using Microsoft Word Version 2016 in 14 point font.

/s/ Matthew S. Adams
*Counsel for Spotex LLC*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 3rd day of May, 2023, I caused this Brief of Appellee to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all registered CM/ECF users.

I further certify that I caused the required number of bound copies of the foregoing Brief of Appellee to be filed, via FedEx, with the Clerk of this Court.

/s/ Matthew S. Adams
*Counsel for Spotex LLC*